The Department of Commerce has a policy of excluding value-added taxes, paid-on-inputs from constructive value when credited against taxes owed to government, or recovered by any other means. Here, the Department applied this policy, notwithstanding two decisions of this Court interpreting the statute to require including such VAT and CV unless remitted or refunded upon exportation. In this case, the reported VAT, on its face, contained errors, and it was not the full amount VAT paid. Most critically, REMA failed to report VAT for electrodes consumed in particular months of the period of review. The Department neither corrected the facial errors in the reported VAT for electrodes, nor determined the full amount of VAT paid. The record does not support the Department's failure to either correct the errors, or, as it twice did before reversing itself, or determine the full amount of VAT paid. Electrodes are necessary to produce silicon metal. Thus, in each month that REMA produced silicon metal, it consumed electrodes. In the review, REMA stated that it paid VAT on the purchase of certain inputs, not that it paid VAT on some of its purchases of a given input. VAT would not be paid on particular electrodes only if they were imported, and the import duties and associated VAT were suspended or refunded under the Brazilian drawback system based on exportation of the finished product. There is no evidence in this case that REMA used this system to avoid payment of VAT on the electrodes consumed during the months in question. Importantly, REMA never claimed in its original response in the review a duty drawback adjustment, which it had every right to do and every incentive to do had it imported electrodes under this system and thereby avoided payment of VAT on those electrodes. In fact, it flat out stated that there was, quote, there was no duty drawback during the POR, end quote. This was in their questionnaire response in the review. Years later, only after the department had twice corrected these errors in the draft results of the first and second remands, only after the draft results of the second remand did REMA come forth with a brand new claim that the reason why VAT wasn't reported for these electrodes was that they were imported, which is directly contrary to this evidence. You know, their initial statement that they did not, you know, that they paid VAT on inputs, not purchases of certain inputs, and their failure to claim a duty drawback adjustment. As I understand it, you're questioning then the REMA's questionnaire answers, which were the subject of some audit, provide substantial evidence to support the conclusions reached, and why is your objection anything more than based on simple speculation? Is there evidence to support your questioning of the questionnaire responses as audited? There is evidence, Your Honor. The evidence is that, you know, their statement, their unqualified statement that they paid VAT on an input, not that they paid it on some purchases of a given input. That's the way they originally stated it. Also, it is evidence that they did not claim a duty drawback adjustment, and our view is that this evidence, at a minimum, required Congress to further investigate. In a case cited by REMA in its brief, the CIT acknowledged that the Department may accept a document like that submitted by REMA on its face, you know, in the absence of evidence suggesting a need to further investigate, and we, you know, during the original review, pointed out these specific discrepancies with respect to electrodes and asked Congress to verify it, to examine it, and they didn't examine that issue at all at verification. They only examined what they, you know, needed to examine to apply their policy of excluding the VAT when recovered by any means other than remand to refund upon exportation. Normally, Congress does a good faith job of investigating what petitioners identify as an issue, and they didn't really, I mean, in our view, they didn't do that in this case because they had this policy, and they should have examined it at verification, and in addition, they should have examined it during the two remands. I mean, this was not a case where only verification occurred. They conducted two remands in which the sole purpose was to include the amount of VAT actually paid, and they could have easily further investigated this issue. Part of the reason they didn't, to be honest, is that they twice corrected the errors, and it was only after a latent process. That's your conjecture. Well, no, it's in the record that they, in the draft results, did so. They did reverse themselves. Yes, of course, but you're speculating as to that was the reason why they didn't do any further investigation. Your Honor, they also, it is true that the government in its brief now identifies this as its own substantial evidence, but in the final results of the second remand, the department actually stated that there was no evidence that VAT was not paid on these electrodes. That's a new characterization that they put on it in their briefs, but they acknowledged in their results that there was no evidence that VAT wasn't paid, and in addition, it's a well-recognized principle, recognized by this court, that what constitutes substantial evidence, in determining whether there's substantial evidence, you need to look at the whole record, including that much fairly detracts from the evidence, and we have identified such evidence that there are statements that they paid on an input, not on some purchases, and also the fact they didn't claim a duty drawback adjustment, which is important evidence suggesting at a minimum a need to further investigate it, and that's, you know, at the bottom of it, we're asking either the errors be corrected, or that there be an investigation so that the full amount of VAT paid can be incorporated. I'd like to address for a moment a part that we, the second issue of the case, which is the department's policy, before this court, the department continues to press its policy of excluding from CV, that's constructive value, when recovered by any, excluding the taxes from CV when recovered by means other than remittance or refund upon exportation, and to ignore the court's clear interpretation of the statute in AIMCOR and Comargo. This court stated in Comargo, quote, as in AIMCOR, we see no reason to depart from the straightforward wording of section 1677B. Therefore, unless ICMS are remitted or refunded upon exportation, they are properly included in the constructive value of the export and merchandise, end quote. We don't think the court could have been any clearer, and that as this court has stated, it is bound to follow its own precedent unless overturned by the decision of this court, and we think that Comargo and AIMCOR are clear and not capable of any other reading. The statute is clear, and the court was clear. It's important not to lose sight of the fact that a portion of the recovery of value-added taxes in this case was by the very same crediting mechanism addressed by the court in AIMCOR and Comargo, which was the use of these accumulated VAT credits to pay other taxes to the Brazilian government. In its brief in Comargo, the department, in fact, asked this court to remand the case so that it could determine what portion of the VAT paid on inputs was recovered by this mechanism. The court, and we cited the portions of their brief where they make that claim, and the court issued no such instructions and held that unless the taxes were remitted or refunded upon exportation, they must be included in constructed value. The only distinction in this case is that REMA used another crediting mechanism, use of the VAT credits to purchase inputs. This mechanism, just like using VAT credits to export, is related to exportation of the subject merchandise, and it just flat out does not constitute remittance or refund upon exportation. But it's a functional equivalent, isn't it? No. What you're doing is taking, you've accumulated these VAT credits over a long period of time from purchases of inputs consumed in other periods to produce other products, and you're using those credits, you know, as a mechanism to reduce your overall cost, but it's not the same as recovering, there was no showing that they had recovered the VAT paid on the inputs, you know, the particular inputs consumed to produce the merchandise exported to the United States during this review period. Of course, the Brazilian law changed since our decisions in AMCOR and EMARGO, so these credits are now more fungible, are they not? They're equivalent to cash. It wasn't changed in a way that matters under the statute, would be our view. The statute simply says, you know, it has limiting language that this court interpreted to require including these taxes unless they're remitted or refunded upon exportation, so it's not a change that makes any difference under either the court's interpretation or the language itself. Well, but the credits are equivalent to cash, in effect. They can be used to purchase inputs, not simply to offset other taxes. In that sense, they're no longer subject to being lost, they are part of the calculus in almost every situation, are they not? Well, it's actually very similar, the two mechanisms. They have an obligation to pay taxes in Brazil. They have an obligation to pay for their inputs. In a way, they're using them as a means of payment to satisfy both of those obligations, but it doesn't, certainly not what Congress identified as the situation in which these taxes could be excluded. Where the taxes are remitted or refunded upon exportation, there's a direct nexus between the taxes paid on the inputs to produce this ton of silicon metal that's being sent to the United States and the government of Brazil is refunding, by its nature, what they're refunding is the tax paid on those inputs to produce that product. Well, that's purely ministerial, though. You can see it, but if they're doing the same thing and just not calling it that, what's the difference? Well, we don't think it's the same thing. The effect is the same. When you have that type of direct nexus, there's a certainty that what's being refunded or remitted is the tax that was paid. With these other types of mechanisms, that type of certainty doesn't exist. At the end of the day, if the language of the statute is clear, that's the end of the matter. In our view, Congress reasonably could decide that this is the only circumstance where there's this direct nexus that that tax would be excluded from constructive value. Congress is trying to go beyond what Congress provided for and that's just contrary to jurisprudence of the Supreme Court and this Court on what happens when the language is clear. Camargo, in particular, is very clear about how it read the statute and we think the Court should adhere to that scene. Do you want to save your rebuttal time, Mr. Stephens? Yes. What's left of it. Mr. Blades. Good morning, Your Honor. Reginald Blades representing the United States in this matter. We have appealed the trial court's erroneous order that because the taxes are not remitted or refunded, they must necessarily be included without any recognition of the possibility of recovery or offset and cannot be adjusted in terms of calculating constructive value. When Congress attempts to, well, when Congress engages in determining constructive value, Congress essentially includes all costs connected with producing the merchandise, including taxes, and tries as best as possible to determine as accurately as possible the actual cost incurred by a company, whether it's for a material input such as charcoal or electricity or if it's some cost that's otherwise not tangible such as taxes or interest or those kinds of things. This statute has been dealt with, as the court is fully aware, twice before in Amcor and Camargo where the court recognized, and there's no change here, that the taxes at issue are not remitted or refunded upon exportation, which is the instruction of the statute for when to exclude the taxes. All that the United States is asking for now is a recognition that when the taxes are not remitted or refunded upon exportation, as is the case with the Brazilian value-added taxes, that commerce may accurately account for the amount of taxes actually incurred in producing the merchandise. So you're arguing that the statute, while specifying when the taxes must be excluded, doesn't specify when the taxes must be included? It does not specify when the taxes must be included, but presumably they should be included if they are a cost of producing the merchandise. They should be excluded under the statute as a matter of law if they were remitted or refunded upon exportation. Otherwise, they need to be considered in the calculation for determining constructive value. So you'd eliminate the set-off entirely? I'm sorry, Your Honor, I didn't hear your entire question. So then you would eliminate the set-off and just require that it be included if that explicit amount is not refunded? No, ma'am. If they're refunded at exportation, then under the statute they must be excluded. Disregarded is the word that the statute uses. Without regard to is the words that the statute uses. Otherwise, the taxes paid exist as a potential cost just as the cost for any other aspect of producing the merchandise. And so determining accurately as possible the amount of taxes actually incurred is what Commerce tries to do. If they are offset or recovered in some manner, then Commerce will recognize that offset or recovery. That was what I was asking. Yes, ma'am. And that is what the trial court in this case precluded Commerce from doing. The trial court in this case said that because they're not remitted or refunded upon exportation, then Commerce cannot recognize any offset or recovery and accurately determine the amount of taxes. That's why we have appealed because that's an erroneous ruling. That's not required by the statute. It's not required by this court's prior decisions in either Amcor or Camargo. Elka Metals has appealed because they would like Commerce to impute some tax amount with regard to electrodes in this matter. The only evidence on the record with regard to that are the verified questionnaire responses from REMA which gives an amount of value-added taxes paid for the electrodes. That's the amount that Commerce ultimately decided was the correct amount to be used and that there was no basis for actually imputing some other amount as Elkam would have Commerce do. For that reason, Commerce, in the final results, ultimately decided that the best course, the course that was supported by substantial evidence on the record, was to use the verified questionnaire responses from REMA with regard to electrodes. For those reasons, we respectfully request the court to reverse the trial court's decision with regard to Commerce's methodology and allow Commerce to accurately account for taxes and to deny Elkam's appeal since there is no evidence to support the imputation that they would like Commerce to make. Mr. Stevens argued that some questions were raised as to the accuracy of the questionnaire responses and Commerce's audited results and suggested that under those circumstances Commerce had an obligation to go back and take another look and reassess. Why is that not a sound argument? When Commerce conducts verifications as in this case, they travel to the actual location of the producer in this case in Brazil and examines their books and some of the matters that are going to be examined are announced to the company in advance so that the company can prepare for that and make sure it has all of the appropriate records available for Commerce to examine. Some of the issues Commerce may examine are not told to the company until Commerce is actually there and so they are somewhat of a surprise to the company. Commerce does not and this court has recognized and approved of the fact that Commerce does not actually conduct a full blown full scale audit examining every single piece of paper connected with the questionnaire responses. In this case Commerce decided what it would verify and including matters announced to the company in advance and surprise matters. Commerce found no significant discrepancies in any of the information that REMA had provided in its questionnaire responses. It is true as Mr. Stevens pointed out that specifically Commerce did not look at this precise issue with regard to electrodes but determined that because it verified many aspects of REMA's questionnaire responses and found no significant discrepancies that it was appropriate to accept as accurate all of REMA's questionnaire responses. Even in the face of the questions raised with regard to the electrodes? Yes sir because as your Honor had suggested in your earlier questions Elkham is speculating as to what the amounts ought to be and whether there ought to be any reporting for those particular months at all. There is no indication that there should be as Commerce mentioned in its final results there is no indication that there should not be and that what's on the record are the verified questionnaire responses from REMA and that is substantial evidence acceptable to determine that that is the appropriate amount for those taxes in this circumstance. Thank you Your Honor. Okay. Thank you. Now Ms. Jung are you raising additional points? May it please the Court I'm Rosa Jung of Bloomberg Charter appearing on behalf of defendant Prosecutor Mima Industrial SA I'd like to begin by just spending a couple of minutes on the electrodes issue that are raised the primary issue that are being appealed by Elkham and Globe This issue has to be dismissed by the Court based on that it must be dismissed due to the failure of Elkham and Globe to raise this issue before the Department and because for that reason they have failed to absolve the Minister of Remedies The allegation of inaccuracy that they have raised that there are facial errors in the amount of VAT reported as related to electrodes was never raised in the administrative case brief before the Department during the administrative review of this case and second they did never raise this issue in the CIT complaint file before the Court of International Trade and third they never raised this issue in the first initial brief supporting the motion for judgment before the Court of International Trade Now turning to the administrative proceeding not only did Globe and Elkham never raise this issue in the case brief which is normally where all parties raise all issues for the Department's consideration they attached to the case brief a health code worksheet in which they calculated what the exact amount of VAT should be included and this wasn't a worksheet that was prepared by RIMA it was based on information that RIMA submitted before the Department and they helpfully attached this worksheet to the case brief and asked the Department only to include this amount so the irony is if the Department had accepted Globe and Elkham's argument and accepted and included the amount that Elkham and Globe wanted to include, they in fact would have no standard to bring this issue before the Court Now when they appealed this case before the Court of International Trade the only issue that was included in the CIT complaint was whether the VAT amount whether or not the VAT amount should be included in the first place. They never raised anything about the facial errors and inaccuracies and in fact in the brief filed before the Court of International Trade in their initial motion for judgment on the agency record they in fact attached the same worksheet they had attached to the case before the Department as supporting their motion for judgment. Therefore we believe that just as an initial matter this issue cannot be brought before the Court because this is exactly why the Doctrine of Administrative Remedies exist so that factual issues regarding factual inaccuracies can be determined by the agency who is best equipped to do so Next issue that I'd like to just point out relates to the two precedents of two cases that this Court decided which is the AIM Court vs. United States and Camargo Correa vs. United States which related to the same VAT issue There are two important distinctions that the Court must consider when considering those two cases and whether those two cases serve as precedents One is that both of those cases were decided under the old version of the statute before the Amendment Act Amendments Act Amendments required by the Act and second there are important differences in the facts of this case as compared to the facts of those two earlier cases You're not saying that the new Act should be applied to these facts are you? Um When you say that the statute changed That's correct Your Honor Are you saying that the new statute should be applied to these facts Absolutely Your Honor I mean not the new facts should be applied to the old facts of the old cases but the decisions that this Court had made in the AIM Court and the Camargo Correa were dependent on the requirement of the statute as it existed at that time This is not the case here We have a new version of the statute which explicitly and specifically I'm referring to the timing requirement which this Court was concerned with mostly in both AIM Court and the Camargo Correa case In the old version of the statute that relates to the cost of materials there was a specific phrase that required the Department to determine costs that preceded the date of exportation and therefore this Court upheld the Department's decision in finding that the respondent in that case did not meet that burden because they couldn't show that the cost was incurred before the date of exportation That clause was explicitly deleted in the new version of the statute Therefore the timing requirement that the Camargo Court was especially concerned with does not apply in this case I see my time is up Yes it is Thank you Ms. Jones Mr. Stevens you may have your full rebuttal time we've run over with Mr. Blade's presentation One thing we want to make clear is that the Department did not as they admit they did not conduct a full blown audit at verification they examined some of Rima's data, the parts that they chose on the VAT issue they examined what they chose to which was facts that are completely irrelevant under this Court's decisions in Camargo and ACORN whether Rima had recovered or used these credits to recover some of these accumulated VAT credits that they had they did not examine in any way, shape or form the VAT paid on inputs and they didn't do that during the two remands as well and we'd also like to be clear we're not speculating that on this question this is an important input that you have to consume in this continuous process and if that is payable How about the point that you never raised any of this in the administrative process well we did the appendix of 8081 it shows where we specifically filed comments to the Department of Commerce raising this issue during the original review and under the CIT's decision in AIMCOR which we cited in our brief raising comments before the department is sufficient to exhaust administrative remedies it's also important to keep in mind the context of this the Commerce decided not to put in any amount of VAT How about the point that you didn't put it into the complaint when you filed in court well there we were we were what we asked consistently if you look at our overall submissions the complaint our comments to the department our motion for judgment for the CIT what we've always asked for is the department needs to include the VAT paid and it was never qualified as to any particular amount and it's just not even true that Councilor Farima said that we attached a worksheet that quote that we offered as calculating the exact amount and that's just untrue the worksheet that was attached at the very top had in bold an estimate and before the department we were arguing whether to include these taxes at all they didn't include any amount so we couldn't even challenge in our complaint or in our briefs a particular amount included they hadn't included anything the whole focus was on do you need to put these in period at that stage it was only they only put amounts in in the draft results well even in the draft results the final results of the second remand is the first time that Commerce put in any amount of tax that we could even say is the wrong amount that Commerce used Mr. Stephens the decision in LCM 1 the court of international trade made the statement that quote when internal taxes are not refunded or remitted upon exportation of the subject merchandise Commerce must include such internal taxes paid on inputs in its calculation of CB relying on Comargo that may be something that the court derived from the Comargo decision but that's not what the statute says isn't that correct well the statute says that constructive value will be the cost of materials the statute specifies that the taxes that are remitted or refunded will be excluded clearly but the statute doesn't say that if the taxes are not remitted or refunded they must necessarily be included it's a clear implication that the court found in Comargo that that's what the statute said but Commerce is not interpreting the statute that way you can read the statute that way certainly but you can also read the statute as being open ended leaving Commerce with the flexibility to make its assessment of constructive value based on all the factors that it believes are appropriate to determine costs well Commerce has at various points in time interpreted the statute the exact way that we think the court did in Comargo and AIMCOR in AIMCOR they were arguing the statute should be read that way before this court and in Comargo they were arguing that the statute should be read that way as clear before the CIT in Comargo they were taking that position but in those cases the taxes were refunded or remitted no that has always been the case in Brazil that the taxes are not remitted or refunded upon exportation any more questions Mr. Stephens thank you Mr. Stephens cases taken under submission